UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

      v.

DAVID STELMACHOWSKI and
WILLIAM MIKAITIS

No. 15 CR 339

Judge Amy St. Eve

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits these consolidated motions *in limine*.

## I.    MOTION TO ALLOW IMPEACHMENT OF DEFENDANT MIKAITIS WITH PRIOR CONVICTIONS SHOULD HE TESTIFY AT TRIAL

On September 5, 2017, a federal jury convicted Defendant Mikaitis of the following felony offenses in case 16 CR 361:

(1)    conspiracy to distribute a controlled substance outside the usual course of professional practice and without a legitimate medical purpose, in violation of Title 21, United States Code, Section 846 (Count One);

(2)    distribution of a controlled substance outside the usual course of professional practice and without a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a) (Counts Two–Eight);

(3)    dispensing prescription drugs without a valid prescription with intent to defraud or mislead, in violation of Title 21, United States Code, Sections 353(b)(1), 331(k), 333(a)(2) and Title 18, United States Code, Section 2 (Counts Nine–Fifteen);

(4)    money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h) (Count Sixteen); and

(5)     money laundering: engaging in a monetary transaction involving criminally derived property having a value greater than $10,000, in violation of Title 18, United States Code, Section 1957 (Count Seventeen).

(16 CR 361, Dkt. 84.) The government proposes to impeach Defendant Mikaitis with his convictions for dispensing prescription drugs without a valid prescription with intent to defraud or mislead (#3) and for conspiracy to money launder (#4).[1]

### A.     Defendant Mikaitis' Convictions for Dispensing Prescription Drugs Without a Valid Prescription With Intent to Defraud or Mislead Are Admissible Under Fed. R. Evid. 609(a)(2)

If he testifies, Defendant Mikaitis' convictions for dispensing prescription drugs without a valid prescription must be admitted under Federal Rule of Evidence 609(a)(2). Rule 609(a)(2) states:

> for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

Thus, convictions qualifying under Rule 609(a)(2) are not subject to the balancing test under Rule 609(a)(1). *See United States v. Noble*, 754 F.2d 1324, 1331 (7th Cir. 1985); *United States v. Harper*, 527 F.3d 396, 408 (5th Cir. 2008).   In the recently concluded trial of Defendant Mikaitis, the district court instructed the jury that the elements of

---

[1] While Defendant Mikaitis has not been sentenced for these crimes, courts have consistently held that "a jury verdict of guilty prior to entry of judgment is admissible for impeachment purposes if it meets the other requirements of Fed. R. Evid. 609." *United States v. Vanderbosch*, 610 F.2d 95, 97 (2d Cir. 1979).  This decision noted that several other circuits have held there is "no distinction between a jury's finding of guilty and the entry of judgment for impeachment purposes."  *Id.* (citing *United States v. Duncan*, 598 F.2d 839, 864-65 (4th Cir. 1979); *United States v. Klein*, 560 F.2d 1236, 1239-41 (5th Cir. 1977), *cert. denied*, 434 U.S. 1073 (1978); *United States v. Rose*, 526 F.2d 745, 746-47 (8th Cir. 1975), *cert. denied*, 425 U.S. 905, (1976); *United States v. Canaday*, 466 F.2d 1191, 1192 (9th Cir. 1972)).

charges in the indictment alleging the dispensing of prescription drugs without a valid prescription with intent to defraud or mislead were as follows:

1. That Phentermine and Benzphentermine were prescription drugs;

2. That these prescription drugs were held for sale after shipment in interstate commerce;

3. The defendant dispensed or caused to be dispensed these prescription drugs without a valid prescription; and

4. That defendant acted with the intent to defraud or mislead.

(16 CR 361, Dkt. 83, p. 25.) Because these offenses required the government to prove not only that defendant dispensed prescription drugs without a valid prescription, but also that he did so with an intent to defraud or mislead, they encompass the requisite "element of deceit, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully." *See* Fed. R. Evid. 609, Advisory Committee Note (2006 Amendment). Accordingly, this conviction must be admitted to impeach Defendant Mikaitis pursuant to Rule 609(a)(2) should he testify at trial.

## B. Defendant Mikaitis' Convictions Under #3 and #4 Above Are Admissible Under Fed. R. Evid. 609(a)(1)(B)

Defendant Mikaitis' convictions for dispensing prescription drugs without a valid prescription and conspiracy to money launder should also be admitted under Federal Rule of Evidence 609(a)(1)(B). Rule 609(a)(1)(B) provides that evidence of a criminal conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." When determining whether the probative value of a prior conviction outweighs any potential prejudice, courts consider the following factors: "(1) the impeachment value of the prior crime; (2) the

point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005) (quoting *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002)).

With regard to the first factor, the impeachment value of Defendant Mikaitis' convictions for dispensing prescription drugs without a valid prescription with *intent to defraud or mislead* is quite high because the offense involves dishonest conduct that relates to Defendant Mikaitis' truthfulness. Similarly, the money laundering conspiracy conviction involves duplicitous behavior consistent with dishonesty. Next, these convictions are not remote in time, but rather very recent, and thus are more relevant as they are of recent vintage. Third, there is no similarly between the money laundering conviction and the offenses in the superseding indictment. While there is similarity between the dispensing of prescription drugs without a valid prescription and the present charges, a limiting instruction to the jury at the time of impeachment and at the close of the case should guard against any prejudice to Defendant Mikaitis. In *United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997), the court found the district court did not abuse its discretion in admitting defendant's prior robbery conviction under Rule 609(a)(1) despite its similarity to the bank robbery charge at trial where defendant's testimony "directly contradicted" government witnesses and "his credibility was a central issue." *Id.*; *see also United States v. Tolliver*, 374 Fed. App'x 655, 658 (7th Cir. 2010) (reviewing for plain error, the court found that

"although the similarity of the two crimes increased the risk of prejudice, the importance of [defendant's] credibility weighed in favor of admissibility").

Fourth and Fifth, Defendant Mikaitis' testimony will likely play an important role at the trial and his credibility will be central to the resolution of the case. Based on Defendant Mikaitis' testimony at trial in case 16 CR 361, he may be expected to testify as follows:

(1) He joined the United States Marines and served his country for a year in Vietnam before obtaining a degree in electrical engineering at Purdue University.

(2) Defendant then went to medical school in Mexico before returning to the Chicago area for additional medical training.

(3) He has practiced medicine for over 33 years and treated over 20,000 patients.

(4) He was ranked 9th out of 900 among Advocate Medical Group doctors in a patient satisfaction survey.

(5) Defendant will testify that he is 74 years' old, has been married to the same woman for 46 years, and has two adult daughters.

(Mikaitis Trial Testimony, 16 CR 361, Aug. 31, 2017, p. 1–9.) On this basis, Defendant Mikaitis is likely to deny the charges in the indictment and argue that he would never place his career and reputation in jeopardy by committing the acts alleged against him. However, this one-sided narrative of Defendant Mikaitis' personal and professional life is obviously incomplete, and very likely to mislead the jury without the limited impeachment allowed by Rule 609. For that reason, and because Defendant Mikaitis' testimony will likely be "a crucial part of the case," *Smith*, 131 F. 3d at 687, the government submits the probative value of the prior convictions outweigh any prejudice to Defendant Mikaitis, and requests leave to impeach

Defendant Mikaitis with the convictions outlined above in #3 and #4 pursuant to Federal Rule of Evidence 609(a)(1)(B).

## II.    MOTION TO BAR DEFENDANTS FROM DEFINING REASONABLE DOUBT DURING CLOSING ARGUMENT

The government moves the Court to order the defense not to attempt to define the term "reasonable doubt" during opening statement or closing argument. The government also asks this Court to order both sides to exchange presentation slides prior to the start of closing argument.

The term "reasonable doubt" should not be defined by the trial court or counsel. *E.g.*, *United States v. Anderson*, 303 F.3d 847, 857 (7th Cir. 2002); *United States v. Reynolds*, 64 F.3d 292, 298 (7th Cir. 1995). That is because any attempt to define the term "presents a risk without any real benefit"—that is, any definition of the term often leans toward "misleading refinements" that "weaken and make imprecise the existing phrase." *Reynolds*, 64 F.3d at 298; *see also Anderson*, 303 F.3d at 857 (government argument was proper because "it was invited by defense counsel's own improper attempt to define the reasonable doubt standard"); *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993) (noting that definitions of reasonable doubt have a likelihood of "confus[ing] juries more than the simple words themselves"). For these reasons, the Seventh Circuit has held that "it is improper for attorneys to attempt to define the term [reasonable doubt]." *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1999); *see also United States v. Clancy*, No. 96–3317, 1999 WL 265164, at *8 (7th Cir. 1999); *United States v. Bruce*, 109 F.3d 323, 329 (7th Cir.1997); *United States v. Alex Janows & Co.*, 2 F.3d 716, 722–23 (7th

Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury.").

Defendant Mikaitis is represented by attorney Beau Brindley and his associate Michael Thompson. Over the years, Mr. Brindley on numerous occasions has defined "reasonable doubt" during closing argument. Often, Mr. Brindley tries to define "reasonable doubt" in the negative. In *United States v. Richards*, No. 10 CR 993 (N.D. Ill. June 18, 2014), for example, Mr. Brindley argued:

> You will be instructed about what the government has to prove, and here's what you're not going to be told. You are not going to be instructed that . . . it's sufficient for them to show that he might have known, that he could have known, that he probably knew. None of that will you be told is sufficient. They have to prove it beyond a reasonable doubt. That's how confident you have to be.

Similarly, in *United States v. Lewisbey*, No. 12 CR 354 (N.D. Ill. Sept. 19, 2013), Mr. Brindley argued: "You're not going to be instructed that here on the jury you're supposed to sit here like detectives, trying to figure out what's more likely to happen and whose side I should be on. That's not the instruction. . . . [Has the government] proven [its] case so convincingly and so completely that [it has] met those specific requirements [of the elements of each offense], that specific language . . . that it's beyond a reasonable doubt?" Mr. Brindley also argued:

> There's no instruction you're going to get that it's sufficient for the government to prove that [the defendant] could have done it, that he might have done it, event that he probably did. You will not get an instruction to any of those effects. It has to be so convincing that it's beyond a reasonable doubt. Might have, could have, probably did, are all insufficient on the letter of this law. Can't be. . . . This is an interesting question I want you to ask yourself: Do you have an abiding confidence about exactly what happened during all of these years in this focus, that you would say that you have certainty, and no questions remained in your mind about these issues?

Mr. Brindley has also defined "reasonable doubt" using similar rhetorical questions and phrases in *United States v. Curtis*, No. 13 CR 952 (N.D. Ill. May 5, 2016); *United States v. Palomino*, No. 11 CR 718 (N.D. Ill. June 12, 2014); and *United States v. Bell*, No. 12 CR 516 (N.D. Ill. Oct. 23, 2013). Additionally, in *Palomino*, Mr. Brindley showed the jury a presentation slide that included similar language about what "reasonable doubt" is not.

If Mr. Brindley were to argue in this case about what he thinks does not constitute reasonable doubt, he would be defining reasonable doubt and disregarding the Seventh Circuit's rule against doing precisely that. Because telling a jury what does not count as reasonable doubt is in fact defining the term, and because Mr. Brindley has done just that in the past, the government moves this Court to bar this line of argument at trial.

The government also asks this Court to allow each party to review the opposing party's closing argument visual presentation, including all presentation slides, prior to the start of argument. In *Palomino*, Mr. Brindley included his reasonable-doubt definition in his presentation slides. Allowing the government to review Mr. Brindley's slides prior to argument would give the government the opportunity to object to any slides attempting to define reasonable doubt before they are shown to the jury.

### III.    EVIDENCE OR ARGUMENT DESIGNED TO ELICIT JURY NULLIFICATION

Next, the government moves this Court to preclude defendants from arguing jury nullification or otherwise presenting evidence or pursuing lines of inquiry designed to elicit jury nullification.

A defendant may not suggest in any way that the jury should acquit even if it finds that the government has met its burden of proof. *See, e.g.*, *United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *Smith v. Winters*, 337 F.3d 935, 938 (7th Cir. 2003) ("A defendant has of course no right to ask the jury to disregard the judge's instructions ('jury nullification')."); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)).

Although the government is unable to anticipate each form of jury nullification argument or evidence that defendant may seek to interject into this trial, the government notes the following examples:

### A.    Motion to Bar Evidence or Argument By Defendants of the Possible Penalties That They Face if Convicted

The government moves the Court to preclude defendants from introducing evidence, making argument, or otherwise mentioning the potential penalties faced if convicted. For one, the Seventh Circuit's Pattern Criminal Jury Instructions now include an instruction specifying, "In deciding your verdict, you should not consider the possible punishment for the defendant. If you decide that the government has

proved the defendant guilty beyond a reasonable doubt, then it will be my job to decide on the appropriate punishment." Pattern Crim. Jury Instructions 47 (7th Cir. 2012).

Additionally, the Seventh Circuit has stated that "arguing punishment to a jury is taboo." *See, e.g.*, *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *vacated on other grounds*, 526 U.S. 813 (1999); *see also United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("[T]he practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored."); *United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that while "the sixth amendment requires that a jury determine questions of guilt or innocence . . . punishment is the province of the Court").

Argument and evidence concerning punishment are improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." (quotation omitted)); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."). Mention of the potential penalties faced by defendants only would serve the improper purpose of jury nullification. *See, e.g.*, *United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are

unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.").

Accordingly, the defense should be precluded from mentioning or introducing evidence about any of the range of penalties faced if convicted.

### B.    Motion To Preclude Evidence and Argument Regarding Administrative Discipline or Sanctions

Similarly, the defense is anticipated to argue that Defendant Mikaitis' conduct should be referred to a medical board or ethics committee for disciplinary action. At the recently concluded trial, defense counsel argued that Defendant Mikaitis should lose his medical license as opposed to being charged with criminal offenses on three occasions:

> They [the pills] should have been going to the weight loss clinic. That's something for medical boards. That's something for medical ethics people. Maybe he should lose his license. Probably should. But that's not what this case is about.
>
> ***
>
> He might be stupid, he might have been foolish, he probably should lose his medical license.
>
> ***
>
> It may be a breach in medical duty, it may be that he's gotten too old to practice medicine, he's too careless, his license should be lost, but he's not guilty of this crime because there's no proof of bad intent, no proof that Jennings wasn't lying to him.

While counsel may argue that evidence that Defendant Mikaitis was negligent or careless isn't enough to convict, any reference to Defendant Mikaitis losing his license or otherwise being punished for his conduct by an administrative body is designed to elicit jury nullification. This argument invites the jury to ignore the Court's

11

instructions of law and leave resolution of the case to some administrative body.   In addition, this argument is misleading because the Illinois Department of Financial and Professional Responsibility has already suspended Defendant Mikaitis' medical license.  Accordingly, any argument that this case belongs before a medical board and not in a court of law is improper.

### C.     Argument or Evidence of Defendants' Lawful Behavior

In an effort to distract the jury from the charges at issue, defendants may seek to admit evidence and testimony that, on prior occasions they acted in a lawful manner. For example, defendants may attempt to argue that they did not commit the charged offenses because they acted lawfully at previous places of employment or committed other good acts. While the government acknowledges that defendants may be permitted to introduce limited testimony concerning their background and introduce character testimony as permitted by Rule 404 and 405, the government moves this Court to preclude defendants from improperly presenting evidence of specific prior good acts.

A defendant may offer evidence of his pertinent character trait to "prove that on a particular occasion[,] [he] acted in accordance with the character or trait." Fed. R. Evid 404(a)(2)(A). But, a defendant is limited in the form that evidence may take: a defendant's pertinent character trait offered in a defendant's case "may [only] be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). In this regard, "[p]roof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment." *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir.

12

1990). Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. *E.g.*, *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) ("Evidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable."). To hold otherwise would be to eviscerate the limitations of Rule 405. *See Johnson*, 2011 WL 809194, at *4 (concluding that "evidence of specific lawful acts of defendants is not properly introduced to show that defendants did not have the requisite intent to commit the crimes charged"). Rule 405 is intended to prevent the series of wasteful "mini-trials" that would inevitably ensue if defendants were allowed to pursue this irrelevant line of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." To the extent that defendants intend to offer evidence regarding their character, they should be permitted to do so only in accordance with Rule 405(a).

## IV. Motion To Preclude Evidence and Argument Regarding Defendant Stelmachowki's Recent Medical History on Relevance Grounds

The Indictment charges Defendant Stelmachowski with the following series of offenses: (1) conspiring, with intent to defraud or mislead, to dispense and cause to be dispensed prescriptions drugs without a valid prescription; (2) acquiring and obtaining possession of a controlled substance by misrepresentation, fraud, and deception; and (3) possession with intent to distribute a controlled substance. The indictment charges that these offenses were committed no later than January 2010 and continuing to in and about July 2013. Evidence of Stelmachowski's medical

history and treatment outside the prosecution period that concluded in 2013 bears minimal relevance to the issues in the case. For example, whether Stelmachowski entered a rehabilitation program after his dealings with Mikaitis does not make it more or less likely that he conspired with Defendant Mikaitis to dispense prescription drugs without a valid prescription. Thus, the government moves to exclude evidence and argument regarding Stelmachowski's medical treatment after he stopped receiving prescriptions from Defendant Mikaitis. Such evidence is simply designed to garner sympathy for the defendant and bears no relevance to the charged conduct.

Alternatively, to the extent that Defendant Stelmachowski intends to put his health in issue at trial, the government requests that he be directed to produce any and all medical records upon which the defense intends to rely two weeks before trial.

## V. MOTION TO ADMIT CHARTS SUMMARIZING VOLUMINOUS RECORDS UNDER FEDERAL RULE OF EVIDENCE 1006

Lastly, pursuant to Federal Rule of Evidence 1006, the government moves to admit summary charts depicting prescription activity relevant to the drug charges in the indictment. These charts summarize the voluminous pharmacy and Illinois prescription monitoring records for prescriptions written by Defendant Mikaitis. A government witness, likely DEA Diversion Investigator Anita Kasza, will testify that she analyzed these prescription records and compiled the data and information therein to prepare the charts. All the evidence underlying the charts is admissible evidence and was previously furnished to defense counsel. Accordingly, the charts are summary exhibits admissible as substantive evidence under Rule 1006 in order to "prove the content of voluminous writings . . . that cannot be conveniently examined

in court." *See generally United States v. White*, 737 F.3d 1121, 1135-36 (7th Cir. 2013), *cert. denied sub nom Helton v. United States*, 134 S. Ct. 2717 (2014); *United States v. Isaacs*, 593 F.3d 517, 527 (7th Cir. 2010); *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004); *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006) ("The proponent must show that the voluminous source materials are what the proponent claims them to be and that the summary accurately summarizes the source materials.").

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    s/ Matthew M. Schneider
        MATTHEW M. SCHNEIDER
        NANI M. GILKERSON
        Assistant United States Attorneys
        219 S. Dearborn Street
        Chicago, Illinois 60604
        (312) 353–5300

Dated:  December 1, 2017